**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MICHAEL HUNTER,**

                **Plaintiff,**

**v.**                                         **Case No:   6:15-cv-845-Orl-31TBS**

**ADP SCREENING AND SELECTION**
**SERVICES, INC.,**

                **Defendant.**

_____

**ORDER**

This matter is before the Court without a hearing on the Motion for Summary Judgment (Doc. 44) filed by Defendant ADP Screening and Selection Services, Inc. ("ADP"), the Response in Opposition (Doc. 49) filed by Plaintiff Michael Hunter (Doc. 44), and the Reply (Doc. 54) filed by Defendant.

        I.        Background

Defendant ADP Screening is a consumer reporting agency that routinely sells background reports about job applicants to potential employers. In June 2013, Plaintiff Hunter applied for a temporary position with URS Corporation ("URS") involving housing inspections related to a FEMA contract awarded in the aftermath of Hurricane Sandy. Pl. Dep. 60:20-61:14; 82:5-15; 90:5-14. Plaintiff's application process was complete on June 10, 2013. Ex. 49-8. URS, as part of its application process, placed an order with ADP requesting a background screen on Plaintiff. Muth Dep. 40:12-41:25; 84:7-86:19. URS provided Plaintiff's first name, last name, middle initial, address, social security number, and date of birth to ADP when it requested the background report. *Id*. at 98:12-25.

Part of the background screen order was a request for certain criminal history searches. *Id*. at 89:12-16. ADP offered an additional service, the SmartScan service, which recommends the best jurisdictions to focus on for the purposes of criminal history searches. *Id*. at 91:8-92:6. URS used this service, which in Plaintiff's case recommended Cook County, Illinois. *Id*. at 94:2-17; 98:4-11. Cook County was chosen as a result of a combination of the address history and public records search that was part of the SmartScan technology. *Id*. ADP used its local vendor/independent contractor, Carolyn Golbach, to complete a criminal record search on Plaintiff in Cook County. Muth Decl. ¶ 4. She was given all the identifiers that URS provided, and sent her subcontractor to travel to Cook County to complete a search using the Court's public access terminal at the criminal courthouse. *Id*. at ¶ 2. Based on this search, Ms. Golbach provided ADP with a criminal record containing Plaintiff's first name, last name, and date of birth. Muth Dep. 76:7-15; 115:23-116:2; 131:21-132:18; 133:2-5; 134:19-22. The court records as reported to ADP did not include a middle initial/name, social security number or any other disqualifying, non-matching identifiers. Muth Ex. 3 (Interrogatory 2).[1]

Although Plaintiff's social security number and middle name do not match the social security number and middle name on the actual public records, the Cook County criminal record was then included on Plaintiff's background screening report to URS. Muth Dep. 76:7-15; 124:14-125:9; 131:14-20; 139:5-20.

On July 3, 2013, Plaintiff followed up to determine the status of his application with URS. Doc. 49-8. Plaintiff's brother and several of his colleagues also applied for the same position with URS during this time period. Pl. Dep. 91:19-92:10; 93:1- 94:8; 94:11-20; 101:5-15. On August 13,

---

[1] Defendant does not require actual criminal records documents from its vendors, only the results as reported through a website provided by ADP. *Id*. at 112:22-113:2.

2013 and August 28, 2013, Plaintiff contacted URS about the Sandy Project and requested a copy of his background report. Doc. 49-8. In March 2014, Plaintiff still had not received a copy of his background report, so he again contacted URS to request it. Doc. 49-17. When he received the report from URS on March 24, 2014, he told URS that the felony conviction/incarceration in Cook County was incorrect. *Id*.

Plaintiff filed a dispute with Defendant challenging the Cook County conviction in April 2014. Pl. Dep. 175:15-20. In response, Defendant called the Cook County clerk, who verified that the name, date of birth, and address in its file matched what was reported and that no other identifier was available from the court's records. Muth Dep. 162:17-163:13. Golbach assisted with the reinvestigation of the court records and gathered additional information about the criminal's sex, race, height, weight, eye and hair color. *Id*. at 163:14-18; 164-6. On April 15, 2016, after Defendant could not obtain any additional identifiers to verify the match of the reported records to Plaintiff, it amended Plaintiff's background screening report to "No Record." Muth Dep. 29:10-30:3; 51:13-54:6; Doc. 49-19.

After Plaintiff's application for the URS position was denied, he continued to seek employment in the field, but was largely unemployed from June 13, 2013 through March 19, 2014. Pl. Dep. 143:11-14. He continued to pursue disaster housing inspector positions. *Id*. at 144:9-14. After about a year of unemployment, Plaintiff left the field of disaster housing inspection to take a job in sales. *Id*. at 78:4-79:4.[2]

II.      Standard

A.  Summary Judgment

---

[2] Plaintiff did secure a housing inspection position for three weeks in February 2016. *Id*. at 72:11-73:6.

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*, 252 F.Supp.2d 1347, 1351–52 (M.D. Fla. 2003). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324–25, 106 S.Ct. 2548 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324–25, 106 S.Ct. 2548; *Watson*, 252 F.Supp.2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985) ("conclusory allegations without specific supporting facts have no probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

B.  Fair Credit Reporting Act ("FCRA")

The Fair Credit Reporting Act is designed to ensure fair and equitable treatment of consumers by consumer reporting agencies and safeguard the confidentiality and accuracy of consumer credit information. The FCRA imposes both criminal and civil liability for violation of its provisions. 15 U.S.C. §§ 1681n, 1681o, 1681q, 1681r.

The FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report[,] it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "The stated purpose of the FCRA is to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a … report." *Equifax Inc. v. F.T.C.*, 678 F.2d 1047, 1048 (11th Cir.1982) (footnote and internal marks omitted). To recover on a claim for negligent violation of § 1681e(b), Plaintiff must prove: (a) a consumer report published to a third party was, in fact, inaccurate, (b) ADP failed to follow reasonable procedures to ensure the maximum possible accuracy of its consumer reports, and (c) he suffered an injury caused by ADP's negligence. *Heupel v. Trans Union LLC*, 193 F.Supp.2d 1234, 1239 (N.D. Ala. 2002); *see also Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1217 (10th Cir. 2002).

The FCRA imposes civil liability on persons who willfully or negligently fail to comply with its requirements. *Id*. §§ 1681n, 1681o. A finding of willful noncompliance under § 1681n entitles the prevailing party to (i) either actual damages suffered by the consumer or statutory damages of not less than $100 and not more than $1,000, (ii) punitive damages as the court may allow, and (iii) reasonable attorney's fees and costs of litigation. *Id*. § 1681n(a). A finding of negligent noncompliance under § 1681o entitles the prevailing party to actual damages plus reasonable attorney's fees and costs of litigation. *Id*. § 1681o(a).

III.     Discussion

Plaintiff alleges that Plaintiff violated § 1681e(b) of the FCRA[3], which provides that "[w]henever a consumer reporting agency prepares a consumer report[,] it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The background screen report ADP provided to URS was admittedly inaccurate in regards to Plaintiff's criminal history. The question is whether that error was the result of ADP's failure to follow reasonable procedures to assure the maximum possible accuracy of its report. This question is "a jury question in the overwhelming majority of cases." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991). For purposes of this motion, Defendant concedes liability under this section. Instead, Defendant argues that Plaintiff incurred no damages as a result of this violation.[4]

One of the essential elements of maintaining an FCRA claim is that a plaintiff must present evidence that he suffered an injury. *See Cahlin*, 936 F.2d at 1161. The burden of proof is on the plaintiff to show that his or her damages were caused by the defendant's violations of the FCRA. *Jackson v. Equifax Information Services, LLC*, 167 Fed. Appx. 144, 146 (11th Cir. 2006). It is well established that a plaintiff suing under the FCRA shoulders the burden of demonstrating the existence of damages resulting from an alleged FCRA violation; and, thus, the failure of an FCRA plaintiff "to produce evidence of damage resulting from a FCRA violation mandates summary

---

[3] Plaintiff voluntarily dismissed his §1681(k) claim, therefore the Court will not address this claim. Doc. 50, 53.

[4] Although damages are not required for a willful violation, the Court finds there is no evidence sufficient under the summary judgment standard to conclude that the Defendant's conduct involved a knowing or reckless violation as required to allow a willful noncompliance claim to proceed. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009) ("A violation is 'willful' for the purposes of the FCRA if the defendant violates the terms of the Act with knowledge or reckless disregard for the law.").

judgment." *Nagle v. Experian Info. Solutions, Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002) (citing *Cahlin*, 936 F.2d at 1160.

Plaintiff alleges two kinds of damages – lost wages and emotional pain and suffering. With respect to lost wages, Grace Previti, HR Manager for URS, stated that the ADP report had nothing to do with URS' decision not to hire Plaintiff. Rather, Ms. Previti testified that "[a]lthough the project initially anticipated completing four phases of hiring, it completed only two phases due to changed needs. A later phase of hiring, for which Michael Hunter's application could have been considered, did not occur for this project. As a result, Michael Hunter's application was not considered and he was not selected for hire due to the project's changed needs."[5] Doc. 44-6.

Notwithstanding Plaintiff's obligation to refute this testimony, Plaintiff offers only conclusory statements that others were hired around the time he applied and a declaration from his brother claiming that he was given an employment offer by URS around the time Plaintiff's application process was completed. Plaintiff also offers evidence that URS paid for and obtained two background reports on him in June 2013, after his application was submitted. Ms. Previti's declaration is not inconsistent with this position, as URS initially thought the position was needed and thus proceeded under that assumption when Plaintiff submitted his application. This is not sufficient to survive summary judgment. Plaintiff would need to provide evidence that others with the same qualifications were hired during the same hiring phase for the same position. In sum, Plaintiff had the affirmative duty to come forward with evidence supporting his claim that

---

[5] Plaintiff has also provided some of ADP's internal notes recorded while researching the report. The notes indicate that there was an urgent need to fill the position Plaintiff applied for, and that URS may have filled the position before ADP had completed the report. Doc. 59-1 at 2 (sealed per Doc. 52, 57).

Defendant's alleged inaccurate report caused him economic harm. *Cahlin,* 936 F. 2d at 1161. Plaintiff has not met this burden.

Plaintiff alleges non-economic damages in the nature of emotional distress, embarrassment, humiliation, and harm to reputation. The Eleventh Circuit has recognized, without deciding, that a plaintiff seeking actual or compensatory damages under the FCRA might be entitled to recover compensation for emotional distress. *See Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1124 (11th Cir. 2006). Here, Plaintiff claims that the incorrect background report harmed him emotionally, and understandably so. However, according to the Plaintiff's testimony, the cause of his distress is primarily rooted in credit card debt, mortgage payments, and an inability to find employment—not the inaccurate background report. Pl. Dep. 187:25-188:13.

Otherwise, Plaintiff's claim for non-economic damages is conclusory. In an FCRA claim, "[a]n injured person's testimony alone may suffice to establish damages for emotional distress provided that [he] reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on conclusory statements." *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1183 (10th Cir. 2013) (quoting *Bach v. First Union Nat. Bank*, 149 F. App'x 354, 361 (6th Cir. 2005)). Plaintiff declares that he was "miserable," "embarrassed," "humiliated," and "suffered from anxiety relating to the damage" to his reputation, but has failed to identify anyone aware of the information in the report other than the defendants. Doc. 49-21; Pl. Dep. 156:21-159:6; 185:7-20; 188:8-16. Based on the failure to link his emotional distress to the incorrect report, and because of the conclusory nature of his proffered evidence, the Court concludes that Plaintiff is not entitled to recover damages for emotional distress.

It is, therefore, **ORDERED** that Defendant's Motion for Summary Judgment (Doc. 44) is

**GRANTED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 19, 2016.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party